## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **KELLY HURST,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:23-00137-N** |
| | ) | |
| **MARTIN O'MALLEY,** | ) | |
| ***Commissioner of Social Security,**[1] | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kelly Hurst brought this action under 42 U.S.C. § 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*[2] Upon due consideration of the parties' briefs (Docs. 20, 23, 26) and those portions of the certified transcript of the

---

[1] During the pendency of this action, Martin O'Malley was confirmed as Commissioner of Social Security (*see* https://www.kiplinger.com/retirement/social-security/omalley-to-be-social-securitys-new-commissioner (last visited 9/27/2024), and began his term of service on December 20, 2023 (*see* https://www.ssa.gov/history/commissioners.html (last visited 9/27/2024)). Accordingly, O'Malley is automatically substituted for former Acting Commissioner Kilolo Kijakazi as the party defendant in this action under Federal Rule of Civil Procedure 25(d), and this change does not affect the pendency of this action. See 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."). The Clerk of Court is **DIRECTED** to update the title of this case on the docket accordingly.

[2] "Title XVI of the [Social Security] Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) (citing 42 U.S.C. § 1382(a)).

administrative record (Doc. 13) relevant to the issues raised, the Court finds that the Commissioner's final decision is due to be **AFFIRMED**.[3]

## I.    *Procedural Background*

Hurst protectively filed the subject SSI application with the Social Security Administration ("SSA") on June 4, 2019. The Commissioner issued a final unfavorable decision on Hurst's application on January 14, 2021, finding her not entitled to benefits. (*See* Doc. 13, PageID.44-48). Hurst sought judicial review of the 2021 final decision with this Court under § 1383(c)(3),[4] and on February 2, 2022, the Court reversed that final decision and remanded Hurst's cause to the Commissioner for rehearing. (Doc. 13, PageID.559-61; S.D. Ala. Case No. 1:21-cv-00109 Docs. 30, 31). On remand to the Commissioner, the Appeals Council for the SSA's Office of Appellate Operations remanded the case to an Administrative Law Judge ("ALJ")

---

[3]    With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 14, 15).

   With the Court's agreement, the parties waived the opportunity to present oral argument. (*See* Docs. 28, 29).

[4] *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

for a new hearing on Hurst's application, with instructions. *See* (Doc. 13, PageID.562-565); 20 C.F.R. § 416.1483(a). The ALJ held the new hearing on February 1, 2023, and on February 15, 2023, issued a second unfavorable decision again denying benefits. (*See* Doc. 13, PageID.508-485). That decision became the Commissioner's final decision after remand when the Appeals Council took no timely action to assume jurisdiction of the case. *See* 20 C.F.R. § 416.1484. Hurst subsequently brought this action seeking judicial review of that decision under § 1383(c)(3).

## II.    *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. [293], [301], 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is "more than a mere scintilla." *Ibid.*; see, *e.g.*, [*Richardson v.*] *Perales*, 402 U.S. [389,] 401, 91 S. Ct. 1420[, 28 L. Ed. 2d 842 (1971)] (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.

Ct. 1816, 144 L. Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, 587 U.S. 97, 102-03, 139 S. Ct. 1148, 203 L. Ed. 2d 504 (2019).

In reviewing the Commissioner's factual findings, a court "'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].'" *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). "'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.'" *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022,

1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[5]

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light

---

[5] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

of all the relevant facts.").[6]

---

[6] However, the "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S. Ct. 1696, 173 L. Ed. 2d 532 (2009). *See also Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. Unit A Sept. 8, 1981) (per curiam) ("It is the claimant who bears the weighty burden of establishing the existence of a disability within the meaning of the Act, and therefore the appellant has the burden of showing that the Secretary's decision is not supported by substantial evidence in the record." (citation omitted)); *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) (unpublished) ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion."). "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)

The "substantial evidence" "standard of review applies only to findings of

---

(applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue').");  *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam) (unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district court. She raised the issue only summarily, without any citations to the record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the ALJ's credibility finding.");  *Turner v. Social Security Administration, Commissioner*, No. 21-13590, 2022 WL 842188, at *2 (11th Cir. Mar. 22, 2022) (per curiam) (unpublished) ("An appellant forfeits an argument by 'mak[ing] only passing references to it or rais[ing] it in a perfunctory manner without supporting arguments and authority.' *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). In her briefing, Turner states that the Appeals Council failed to request her records or obtain a consultative evaluation. But she cites no authorities or makes any other argument tending to establish that it had a duty to do so. She has therefore failed to adequately develop this argument, and it is forfeited.");  *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 899 (11th Cir. 2022) ("Harner's references to the substantiality of the evidence, the administrative law judge's analysis of her fibromyalgia, and the administrative judge's consideration of her daily activities as '[d]iminish[ing] the [p]ersuasiveness of [h]er [a]llegations' consist only of block quotations from and cursory mentions of various decisions of this and other courts. Harner failed to refer to the facts of her case or to provide any meaningful explanation as to how the decisions she cites apply to her claim, her arguments are forfeited.");  *Grant v. Soc. Sec. Admin., Comm'r*, No. 21-12927, 2022 WL 3867559, at *2 (11th Cir. Aug. 30, 2022) (per curiam) (unpublished) (appellant forfeited most challenges where "brief consist[ed] largely of block quotations with only passing or conclusory references to how the law and the relevant facts relate");  *Walker v. Comm'r, Soc. Sec. Admin.*, 835 F. App'x 538, 542 (11th Cir. 2020) (per curiam) (unpublished ("As the government notes, Walker's argument on this issue consists of lengthy block quotes to caselaw without any attempt to apply the law to the facts of this case. He has thus abandoned the issue by failing to develop his arguments.").

fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211

(11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). Moreover, an ALJ's decision must "state with at least some measure of clarity the grounds for [the] decision." *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. A court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974) (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921 (11th Cir. 2019) (per curiam) (unpublished)[7] ("Agency actions … must be upheld on the same bases articulated in the agency's order." (citing *Texaco Inc.,* 417 U.S. at 397, and *Newton*, 209 F.3d at 455)).

Relevant here, eligibility for SSI requires a showing that the claimant is

---

[7] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

"disabled[,]" 42 U.S.C. § 1382a(1)-(2), meaning the claimant is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[8]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th

---

[8] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

If a court determines that the Commissioner reached a decision "by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Nevertheless, "'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.'" *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)).

When, as here, an ALJ issues an unfavorable decision after remand by a federal court, and the Appeals Council does not "assume[] jurisdiction of the case[,]" then the ALJ's decision "become[s] the final decision of the Commissioner after remand..." 20 C.F.R. § 416.1484(a).

## III.   *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Hurst had not engaged in substantial gainful activity since June 4, 2019, her application date.[9] (Doc. 13, PageID.513). At

---

[9] "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file." *Moore*, 405 F.3d at 1211. Hurst alleged disability beginning March 19, 2016. (*See* Doc. 13, PageID.511).

Step Two,[10] the ALJ determined that Hurst had the following severe impairments: anxiety, obesity, hypertension, mild osteophyte of the cervical spine, and left zygoma fracture/globe injury status post removal of eye and implantation of prosthesis. (Doc. 13, PageID.513-515). At Step Three,[11] the ALJ found that Hurst did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (Doc. 13, PageID.515-517).

---

[10] "The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. *See also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (per curiam) (Step Two "is a 'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.' " (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). "[A]n 'impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.' A claimant's burden to establish a severe impairment at step two is only 'mild.' " *Schink*, 935 F.3d at 1265 (citation omitted) (quoting *McDaniel*, 800 F.2d at 1031).

[11] Step Three "identif[ies] those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Yuckert*, 482 U.S. at 153. *See also Sullivan v. Zebley*, 493 U.S. 521, 525, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) ("In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work … If the claimant's impairment matches or is 'equal' to one of the listed impairments, he qualifies for benefits without further inquiry."); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997) ("If the claimant's condition meets or equals the level of severity of a listed impairment, the claimant at this point is conclusively presumed to be disabled based on his or her medical condition.").

At Step Four,[12] the ALJ determined that Hurst had the residual functional capacity (RFC) "to perform light work as defined in 20 CFR 416.967(b)[,]"[13] under

---

[12] At Step Four,

the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted). "[A]n ALJ's RFC assessment is an administrative finding based on all the relevant evidence, including both medical and nonmedical evidence." *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1065 (11th Cir. 2021).

[13] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. The criteria for "light" work are as follows:

the following limitations: Hurst "can lift and/or carry 20 pounds occasionally and 10 pounds frequently[;] can stand and/or walk six hours and sit six hours with customary breaks[;] cannot climb ladders, ropes, or scaffolds[;] can frequently push/pull arm controls and frequently reach[;] cannot operate heavy moving equipment, meaning the entire apparatus moves[;] cannot work in an inherently dangerous/hazardous environment wherein an impairment in depth perception could pose a life-threatening situation, such as around traffic, at unprotected heights, around open flames, open bodies of water, etc.[;] cannot work around extreme heat or steamy environments[;] cannot tolerate exposure to caustic tactile substances, such as cleaning agents or chemicals, unless the job is customarily done with gloves[;] is limited to reasoning, language, and math levels no higher than three[;] can tolerate occasional changes in work setting or duties[;] can frequently handle, finger, and feel[;] cannot perform tasks involving reading fine print or dials[; and] cannot perform tasks requiring depth perception." (Doc. 13, PageID.518-

---

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b).

520). The ALJ also found that Hurst had no past relevant work. (*Id.*, PageID.520).

At Step Five, after considering testimony from a vocational expert (VE),[14] the ALJ found that there exist a significant number of jobs in the national economy as a cleaner/housekeeper (~423,000 nationally), merchandise marker (~219,000 nationally), and subassembler (~17,000 nationally) that Hurst could perform given her RFC, age, education, and work experience. (Doc. 13, PageID.520-522). Thus, the ALJ found that Hurst was not under a disability as defined in the Social Security Act since her application date. (*Id.*, PageID.522).

## IV.    *Analysis*

Hurst claims that the ALJ reversibly erred by failing at Step Five to resolve apparent conflicts between the VE's testimony and information in the Dictionary of Occupational Titles (DOT). The Commissioner concedes that the ALJ may have committed some error in this regard, but that the error was ultimately harmless. After careful consideration, the undersigned agrees with the Commissioner.

"The DOT is an extensive compendium of data about the various jobs that exist in the United States economy, and includes information about the nature of each type of job and what skills or abilities they require." *Washington v. Comm'r of*

---

[14] "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

*Soc. Sec.*, 906 F.3d 1353, 1357 n.2 (11th Cir. 2018).[15] "The DOT groups jobs into 'occupations' based on their similarities and assigns each occupation a code number." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1281 (11th Cir. 2020). "[T]he DOT is integral to disability hearings" "as a source of jobs data." *Washington*, 906 F.3d at 1365-66. *See also Goode*, 966 F.3d at 1281 ("To obtain a job-numbers estimate, a vocational expert may consult a publication like the DOT. *See* 20 C.F.R. § 416.966(d)(1)…Although the DOT is outdated—some would say obsolete—it remains one of the vocational expert's primary tools.").

Social Security Ruling (SSR) 00-4p, 2000 WL 1898704 (Dec. 4, 2000), "imposes a duty on ALJs to identify and resolve apparent conflicts between DOT data and VE testimony, and this duty is not fulfilled simply by taking the VE at his word that his testimony comports with the DOT when the record reveals an apparent conflict between the VE's testimony and the DOT. Rather,…the ALJ has an affirmative obligation to identify any 'apparent' conflict and to resolve it. The failure to properly discharge this duty means the ALJ's decision is not supported by substantial evidence." *Id.* at 1362.[16] "Specifically, the ALJ must: (1) identify any

---

[15] "The Department of Labor was responsible for compiling [the DOT]. As of 1999, the Department stopped producing new editions of the work, and much of the data contained in the DOT is now found in online databases." *Washington*, 906 F.3d at 1357 n.2.

[16] "Although SSR 00-4P is not binding on this court, the SSA is nevertheless bound to follow it." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1321 (11th Cir. 2021) (citing *Washington*, 906 F.3d at 1361). *Accord, e.g., Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1324 n.12 (11th Cir. 2020) ("A Social Security ruling is an 'agency ruling[ ] published under the authority of the Commissioner of Social

'apparent' conflicts, regardless of whether that conflict is brought to the ALJ's attention by the parties or the VE; (2) explain any discrepancy between the VE's testimony and the DOT; and (3) detail in the decision how that discrepancy was resolved." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1321 (11th Cir. 2021) (citing *Washington*, 906 F.3d at 1362).

In this context, " 'apparent' should be taken to mean apparent to an ALJ who has ready access to and a close familiarity with the DOT. Put another way, if a conflict is reasonably ascertainable or evident, the ALJ is required to identify it, ask about it, and resolve it in his opinion. [Courts] take the word 'apparent' to mean 'seeming real or true, but not necessarily so.' " *Washington*, 906 F.3d at 1366 (quoting *Pearson v. Colvin*, 810 F.3d 204, 209 (4th Cir. 2015)).

Hurst first argues that the ALJ failed to resolve an "apparent" conflict related to the RFC determination that Hurst "cannot perform tasks involving reading fine print or dials." Specifically, while the VE testified that a hypothetical individual identical to Hurst could perform the subassembler and merchandise marker jobs in spite of that limitation, the DOT states that those jobs require constant and frequent near visual acuity, respectively. *See* DOT 729.684-054, 1991 WL 679729 (Subassembler); DOT 209.587-034, 1991 WL 671802 (Merchandise Marker). In response, the Commissioner concedes that this constituted an

---

Security' and is 'binding on all components of the Administration.' *Sullivan v. Zebley*, 493 U.S. 521, 539 n.9, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) (internal quotation marks omitted). Although we are not bound by a Social Security ruling, we do afford it deference. *See Fair v. Shalala*, 37 F.3d 1466, 1468-69 (11th Cir. 1994).").

"apparent" conflict, and at least tacitly admits that the ALJ failed to resolve it. However, the Commissioner argues, and the undersigned agrees, that Hurst has not shown there were any apparent conflicts for the ALJ to resolve regarding the third job the VE testified Hurst could perform, that of cleaner/housekeeper.

Hurst argues that the ALJ failed to resolve apparent conflicts between the DOT's description of the cleaner/housekeeper job, DOT 323.687-014, 1991 WL 672783, and the VE's testimony that a hypothetical individual identical to Hurst could perform the job in spite of being limited in the RFC to frequent pushing and pulling, to tasks not requiring depth perception, and to tasks that involve reading dials. However, none of these purported conflicts rises to the level of an "apparent" one the ALJ was required to resolve.

Hurst first argues that she is unable to perform the cleaner/housekeeper job because it requires constant pushing and pulling, while she has been limited to only frequent pushing and pulling. However, nothing in the DOT's description of the cleaner/housekeeper job suggests, much less explicitly states, that it requires the ability to constantly push and pull. Indeed, the DOT recognizes that the job may entail "any combination of" such non-pushing/pulling activities as "sort[ing], count[ing], fold[ing], or carr[ying] linens[;] mak[ing] beds[;] replenish[ing] supplies, such as drinking glasses and writing supplies[;] check[ing] wraps[;] rendering personal assistance to patrons[; and] hang[ing] drapes." DOT 323.687-014, 1991 WL 672783.

The DOT classifies cleaner/housekeeper job as "Light Work," and Hurst's

argument largely hinges on the DOT's general definition of "Light Work," which involves "[e]xerting up to 20 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) *and/or* up to 10 pounds of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) *and/or* a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects." DOT 323.687-014, 1991 WL 672783 (emphasis added). To accept Hurst's argument, however, would require the Court to ignore the "or" in each "and/or" of that provision. By setting out the differing exertional frequencies in the disjunctive, the plain language of the DOT only requires that Light Work jobs involve at least one of the stated exertional frequencies—i.e., exerting up to 20 pounds of force occasionally, <u>or</u> up to 10 pounds frequently, <u>or</u> a negligible amount constantly—while recognizing that the job can also involve all three or some combination thereof.  The RFC stated that Hurst "can lift and/or carry 20 pounds occasionally and 10 pounds frequently[,]" indicating she is able to perform at least at two of the exertional frequencies required for the cleaner/housekeeper job.

Further elaborating on what constitutes "Light Work," the DOT's cleaner/housekeeper description also states: "Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing

and/or pulling of materials even though the weight of those materials is negligible." DOT 323.687-014, 1991 WL 672783. However, as the Commissioner correctly points out, under that provision an ability to constantly push and/or pull is only required for Light Work jobs performed at "a production rate pace," and nothing in the DOT's cleaner/housekeeper description indicates such a pace is involved. And as the "or" and "and/or" separating the subsections of that provision indicate, a job can still be classified as Light Work under the DOT without meeting the third subsection.

Hurst relies primarily on *Kawther Y. v. Kijakazi*, No. 21-CV-01191-BGS, 2023 WL 2766666 (S.D. Cal. Mar. 30, 2023), in claiming an apparent conflict regarding her ability to push and pull. Initially, the undersigned notes that a " decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n.7, 131 S. Ct. 2020, 179 L. Ed. 2d 1118 (2011) (quotation omitted)). *Accord, e.g.*, *United States v. Cerceda*, 172 F.3d 806, 812 n.6 (11th Cir. 1999) (en banc) (per curiam) ("The opinion of a district court carries no precedential weight, even within the same district."). Moreover, *Kawther Y.* is unpersuasive for at least two reasons. First, that decision appears to assume that, because the DOT classifies cleaner/housekeeper as Light Work, then any job classified as such necessarily involves <u>all</u> of the different exertional aspects of Light Work listed in the definition. *See* 2023 WL 2766666, at *6 ("Th[e cleaner/housekeeper] occupation is also classified by the physical exertional level of 'light work.' There is an apparent conflict as discussed above since Plaintiff's RFC

limits her to occasional pushing or pulling, and light work includes jobs that require constant pushing or pulling."). *Kawther Y.*, then, makes the same mistake as Hurst in reading the definition of Light Work in the conjunctive sense (i.e., replacing "or" and "and/or" with just "and"), as opposed to the disjunctive sense as the "and/ors" indicate it should.

Second, *Kawther Y.* concluded that it was " 'likely and foreseeable' that cleaning a room would involve constantly pushing and pulling a supply cart, a vacuum, a mop, bedding, and furniture." *Id.* However, as explained above, nothing in the DOT's description of the cleaner/housekeeper position indicates an ability to constantly push and pull is required. While the Ninth Circuit Court of Appeals may interpret SSR 00-4p to require ALJs and courts to consider "likely and foreseeable" requirements of a DOT job beyond those expressly listed, this Court is bound by the Eleventh Circuit's interpretation of SSR 00-4p in *Washington* and its progeny, and "Washington does not require the ALJ to draw inferences about job requirements that are unsupported by the DOT's text and then resolve conflicts between the VE's testimony and those unsupported inferences." *Christmas v. Comm'r of Soc. Sec.*, 791 F. App'x 854, 857 (11th Cir. 2019) (per curiam) ("Ms. Christmas notes that the VE acknowledged she cannot work in fast-paced assembly line jobs and argues this conflicts with the DOT description, which suggests that a fruit distributor is a fast-paced assembly line job. However, the DOT does not discuss the pace of a fruit distributor job or the quantity of fruit that a distributor must or should handle." (record citation omitted)). *See also Buckwalter*, 5 F.4th at 1323 ("potential[] tension"

between VE's testimony and DOT did "not arise to the level of an 'apparent) conflict" where RFC term did "not plainly contradict" purportedly conflicting DOT term).

That admonition is also fatal to Hurst's other claimed apparent conflicts related to her limitations to no tasks requiring depth perception or reading dials. Similar to the "likely and foreseeable" requirements found in *Kawther Y.*, Hurst's arguments in support of these apparent conflicts do not purport to rely on the plain text of the DOT's description of the cleaner/housekeeper job, but purportedly "commonsense" extrapolations of what the DOT's requirements for that position <u>might</u> entail. Hurst claims those limitations are inconsistent with the DOT's description of a cleaner/housekeeper's duties as including "[s]weep[ing], scrub[bing], wax[ing], and polish[ing] floors, using brooms and mops and powered scrubbing and waxing machines[,]" and "[w]ash[ing] walls, ceiling,…windows, door panels, and sills." DOT Master Titles and Definitions, Cleaner I (Any Industry), 1991 WL 645969.[17] According to Hurst, "[a] commonsense reading of this requirement entails reaching high above to replace light bulbs, clean, dust, and wash these areas of a house or a hotel" (Doc. 20, PageID.800), all of which would require depth perception.[18] Hurst also argues that "[a] commonsense knowledge of [powered

---

[17] The DOT's description of a cleaner/housekeeper's duties incorporates those "described under CLEANER (any industry) I Master Title." DOT 323.687-014, 1991 WL 672783.

[18] In making this argument, Hurst misinterprets the district court's holding in *Daniel E.S. v. Saul*, No. 18CV03069MJDECW, 2020 WL 1172130, at *6 (D. Minn.

scrubbing and waxing] machines entails the reading of dials pertaining to different levels of strength used to scrub and wax." (*Id.*). However, these arguments in essence ask the Court to fault the ALJ for not "draw[in]g inferences about job requirements that are unsupported by the DOT's text and then resolv[ing] conflicts between the VE's testimony and those unsupported inferences[,]" something SSR 00-4p, as interpreted in *Washington*, does not require. *Christmas*, 791 F. App'x at 857. *Accord Horton v. Kijakazi*, No. 2:22-CV-21, 2023 WL 5993122, at **5-8 (S.D. Ga. Aug. 4, 2023) ("In this case, the inference of a depth perception requirement into the DOT definitions is necessary to find a conflict with the VE testimony. While there might be some tension between a depth perception limitation and a reaching and handling requirements [sic]—in that it might be difficult to reach for some things with impaired depth perception—that does not constitute a conflict such that the limitation would prevent altogether an individual without depth perception

---

Jan. 28, 2020), *report and recommendation adopted*, No. 18-CV-3069 MJD/ECW, 2020 WL 1169483 (D. Minn. Mar. 11, 2020). The court in that case did not, as Hurst contends, "determine[] that an unresolved apparent conflict arose between the RFC assessment -- which found the claimant unable to perform any tasks that require depth perception -- and the VE-identified job of housekeeper/cleaner." (Doc. 20, PageID.800). In a footnote, and seemingly as an aside to its primary finding of reversible error, the court determined that an inability to perform tasks involving depth perception conflicted with another DOT job, that of Laundry Worker II. *Daniel E.S.*, 2020 WL 1172130, at *8 n.6. True, the court did note, in the section of the opinion summarizing the administrative proceedings, that the VE had testified that the claimant would no longer be able to perform the job of cleaner/housekeeper if a limitation to "occasional" depth perception was added to her RFC. *Id.* at *6. However, the court did not purport to rule on the significance of that testimony as it related to the cleaner/housekeeper job, and Hurst has cited no authority to suggest that a VE's testimony in one claimant's case binds the Commissioner in all other cases.

from performing that function. Further, the express exclusion of a depth perception requirement in the DOT definitions weighs strongly against reading in such a requirement." (relying on *Christmas*)), *report and recommendation adopted*, No. 2:22-CV-21, 2023 WL 5500840 (S.D. Ga. Aug. 25, 2023) (rejecting plaintiff's objections to Magistrate Judge's finding that there was no apparent conflict between the VE testimony and the DOT).[19]

In sum, Hurst has failed to persuasively demonstrate that the ALJ left unresolved any "apparent" conflict between the VE's testimony and the DOT with regard to the cleaner/housekeeper position. However, as Hurst notes, excluding the numbers for the other two jobs leaves approximately 423,000 jobs existing the national economy that the VE testified an individual like Hurst could perform. Hurst argues that, because the ALJ did not make an express finding that 423,000 jobs—as opposed to the 659,000 cumulative number of cleaner/housekeeper, merchandise marker, and subassembler jobs—was itself a "significant number" to

---

[19] For the first time in her reply brief, Hurst claims an additional apparent conflict, arguing that the RFC limitation precluding her from operating heavy moving apparatus equipment conflicts with the duty of using power scrubbing and waxing machines. Hurst gives no reason for waiting until her reply to argue this additional claim, and it is thus forfeited, as " '[a]rguments raised for the first time in a reply brief are not properly before a reviewing court.' " *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) (quoting *United States v. Coy*, 19 F.3d 629, 632 n.7 (11th Cir. 1994) (per curiam) (citation omitted)). *Cf. Miles*, 84 F.3d at 1400 ("Our review in a Social Security case is the same as that of the district court."). Additionally and alternatively, this argument is due to be rejected for the same reason the Court found no apparent conflicts related to Hurst's limitation to no tasks requiring depth perception or reading dials. Claiming to draw on "common experience and common knowledge" (Doc. 26, PageID.832), Hurst once again attempts to fault the ALJ for not drawing unsupported inferences from the DOT text, which Eleventh Circuit precedent does not require.

satisfy Step Five, the ALJ's decision still cannot stand.

"At step five, an ALJ must ascertain whether the jobs that a claimant can perform exist in significant numbers in the national economy." *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1318 (11th Cir. 2021) (quotations omitted). As Hurst correctly notes, "[w]hether there are a significant number of jobs a claimant is able to perform with his limitations is a question of fact to be determined by a judicial officer [i.e., the ALJ]." *Id.* (quotation marks omitted). That is, the "'ALJ, relying on the VE's testimony, and not the VE, determines whether a specific number of jobs constitutes a significant number.'" *Id.* (quoting *Brooks v. Barnhart*, 133 F. App'x 669, 670 (11th Cir. 2005) (per curiam) (unpublished)).

In *Viverette*, the VE testified that there were "104,000 document preparer positions available nationally, 7,000 final assembler positions available nationally, and 14,000 check weigher positions available nationally" that the claimant could perform. *Id.* Like the ALJ here, the *Viverette* "ALJ referenced th[e VE] testimony collectively and concluded that [the claimant] 'is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.'" *Id.* The Eleventh Circuit determined that the *Viverette* ALJ had failed to resolve an apparent conflict for the document preparer position, thus taking it "out of the equation" for purposes of the appeal in determining the number of jobs the claimant could perform and leaving only the 21,000 cumulative total jobs for the final assembler and check weigher occupations. *See id.* However, like the ALJ here, the *Viverette* ALJ "apparently treated the three occupations [identified by the VE]

cumulatively for purposes of the 'significant numbers' determination, for she did not make any findings about how many jobs were available in the national economy for each of the occupations. In other words, the ALJ did not make a finding about how many final assembler or check weigher jobs were available nationally or whether the number of final assembler and check weigher jobs, either separately or cumulatively, constituted a significant number, absent the document preparer jobs." *Id.*

The Commissioner argued that the fact there remained 21,000 jobs the claimant could perform rendered harmless the ALJ's failure to resolve the apparent conflict for the document preparer position. *Id.* at 1317-18. The Eleventh Circuit disagreed, stating:

> Here, the ALJ based her finding of fact on the VE's testimony about a total number of 125,000 jobs, without considering an apparent conflict that affected 104,000 of those jobs. Given that over eighty percent of the jobs presented to the ALJ are affected by the apparent conflict and that we are reviewing the decision of the ALJ (on behalf of the Commissioner) for substantial evidence, we are hesitant to make any factual determinations ourselves about whether the final assembler or check weigher positions exist in significant numbers in the national economy. Where additional (or more specific) agency fact-finding is needed, remand is the appropriate disposition. *See Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004) ("[J]udicial line-drawing in this context is inappropriate, [because] the issue of numerical significance entails many fact-specific considerations requiring individualized evaluation, and ... [because] the evaluation 'should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation.'") (citation omitted).

*Id.* at 1318–19.

In a footnote, the Eleventh Circuit further noted:

The Tenth Circuit faced a very similar situation in *Kimes v. Comm'r of Soc. Sec.*, 817 F. App'x 654 (10th Cir. 2020), and remanded for the ALJ to make specific findings about the number of jobs available nationally for a specific occupation: "In determining whether the 'significant numbers' requirement was satisfied, the ALJ considered both jobs together, for a total of 96,000 jobs. He did not consider whether [the occupation of] industrial cleaner, alone, with only 16,000 jobs, satisfies the requirement. It is not for this court to decide, in the first instance, whether a relatively low number qualifies as a 'significant number' of jobs." *Id.* at 659. We find *Kimes* to be persuasive and follow its approach.

*Id.* at 1319 n.3.

Hurst argues that the Court must remand this case for the ALJ to make a specific factual finding that 423,000 is still a significant number of jobs. In support, she cites several district court decisions, all but one (*see* n.20, *infra*) from various judges for the Middle District of Florida, that appear to take a hardline application of *Viverette* by remanding cases where an apparent conflict excluded <u>any</u> number of jobs and the ALJ did not make a separate determination whether the remaining jobs, separately or in the aggregate, still existed in significant numbers. *See, e.g.*, *Cisneros v. Comm'r of Soc. Sec.*, No. 2:20-CV-873-JLB-MRM, 2022 WL 354717, at **3-4 (M.D. Fla. Feb. 7, 2022) (available jobs dropped approximately 53% from 288,000 to 133,000 due to unresolved apparent conflict); *Connell v. Comm'r of Soc. Sec.*, No. 6:22-CV-739-DNF, 2023 WL 3774581, at **4-5 (M.D. Fla. June 2, 2023) (Frazier, M.J.) (drop of 20% from 90,000 to 72,000); *Horning v. Comm'r of Soc. Sec.*, No. 8:22-CV-1817-DNF, 2023 WL 5369625, at *5 (M.D. Fla. Aug. 22, 2023) (Frazier, M.J.) (drop from 182,000 to 164,000, approximately 10%); *Cannon v. Kijakazi*, No. 8:21-CV-2589-CPT, 2023 WL 2706735, at **4-7 (M.D. Fla. Mar. 30, 2023) (Tuite,

M.J.) (drop from 244,000 to 231,000, approximately 5.5%).[20]

---

[20]     In further support of this point, Hurst also cites the undersigned's decision in *Prince v. Kijakazi*, No. CV 1:21-00110-N, 2022 WL 1156951 (S.D. Ala. Apr. 19, 2022), but that decision expressly declined to address the harmless-error analysis from *Viverette* at issue here, instead reversing based on what the undersigned viewed as *Viverette*'s "additional" or "alternative" holding that " '[i]n the words of *Washingto*n, "[w]e can't disregard the error"—the failure to address the apparent conflict—"on the grounds that no conflict in fact existed." ' " 2022 WL 1156951, at *10 (quoting *Viverette*, 13 F.4th at 1318 (quoting *Washington*, 906 F.3d at 1366)).

     In her reply, Hurst argues for the first time that *Prince* announced a categorical rule that the above-cited additional/alternative *Viverette* holding means that a failure to address an apparent conflict can never be harmless and always mandates reversal. Admittedly, some of the language in *Prince* sweeps broadly and supports that argument. *See* 2022 WL 1156951, at *10 ("[T]he undersigned need not address the merits of the Commissioner's harmless error argument as the *Viverette* panel did, because this Court is bound by *Viverette*'s alternative holding that an ALJ's failure to resolve an apparent conflict cannot be deemed harmless, since to do so would amount to a contradictory finding that 'no conflict in fact existed.' Because the Commissioner concedes that the ALJ here failed to resolve an apparent conflict, and because the undersigned finds no reason to believe that concession is erroneous, the Commissioner has necessarily conceded to reversible error."). But, as has already been noted, a district court judge's decision is not binding precedent on anyone, even on the same judge in a different case. *See also McGinley v. Houston*, 361 F.3d 1328, 1331 (11th Cir. 2004) (per curiam) ("The general rule is that a district judge's decision neither binds another district judge nor binds him, although a judge ought to give great weight to his own prior decisions.").

     Having been given the chance here to consider the issue anew, the undersigned finds that *Prince*'s reasoning should be limited to the facts of that case, particularly as the material ones were identical to those in *Viverette*. *Cf. Edwards v. Prime, Inc.*, 602 F.3d 1276, 1298 (11th Cir. 2010) "[R]egardless of what a court says in its opinion, the decision can hold nothing beyond the facts of that case. All statements that go beyond the facts of the case…are dicta. And dicta is not binding on anyone for any purpose." (citations omitted)). In *Prince*, the Commissioner conceded to essentially the same apparent conflict that was found in *Viverette*, while here the Commissioner has conceded to a substantially different apparent conflict. *Viverette* prefaced both of its holdings with this statement: "*On this record*, we cannot conclude that the ALJ's failure to address the apparent conflict as to the document preparer position was harmless." *Viverette*, 13 F.4th at 1318 (emphasis added). That statement indicates that both holdings were dependent in some way on the specific facts of that case, particularly the nature of the apparent conflict at

However, a close reading of *Viverette* does not convince the undersigned that it stands for so rigid a rule. Rather, the undersigned "is persuaded by the Commissioner's argument, and by district courts considering a similar argument, that the Eleventh Circuit has 'left the door open' for [federal courts] to evaluate whether the remaining jobs exist in significant numbers, such that the ALJ's error was harmless[,]" "where the number of positions under consideration, after excluding the error-tainted job, are 'remarkably higher than the "relatively low number" of positions in *Viverette* ....' " *Thompson v. O'Malley*, No. CV623-001, 2024 WL 996745, at *4 (S.D. Ga. Feb. 15, 2024) (Ray, M.J) (quoting *Hay v. Kijakazi*, No. 20-CV-62288, 2023 WL 8719154, at **10-11 (S.D. Fla. Dec. 17, 2023)), *report and recommendation adopted*, 2024 WL 991598 (S.D. Ga. Mar. 7, 2024) (Hall, C.J.) (rejecting the plaintiff's objections to the magistrate judge's *Viverette* analysis). *Viverette* emphasized that the panel was "hesitant" to find harmless error "[g]iven that over eighty percent of the jobs presented to the ALJ" there—104,000 of 125,000—were "affected by the apparent conflict" at issue. 13 F.4th at 1318. The Tenth Circuit's *Kimes* decision, which *Viverette* found "persuasive," *id.* at 1319 n.3, also dealt with a large drop in available jobs due to an unresolved apparent conflict, from 96,000 to 16,000, and because the ALJ there "did not consider whether…only 16,000 jobs[] satisfies the requirement[,]" the panel declined "to decide, in the first

---

issue there, which does not support extending the alternative holding relied on in *Prince* to a categorical rule finding that any unresolved apparent conflict can never be harmless error. *Viverette* appears to recognize as much, acknowledged that an "ALJ's failure to address [an] apparent conflict…is not the end of the matter." *Id.* at 1317.

instance, whether *a relatively low number* qualifies as a 'significant number' of jobs." *See Kimes*, 817 F. App'x at 659 (emphasis added).

The undersigned need not draw a precise line as to what constitutes a sufficiently higher number of remaining jobs than those in *Viverette*, as the number of jobs remaining in this case, 423,000 in the national economy (approximately 64% of the cumulative number of jobs found at the administrative level), easily satisfies that amount. And as the Commissioner correctly notes, the Eleventh Circuit has affirmed an ALJ's finding that far fewer jobs than that in the national economy, 80,000, constituted a "significant number." *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987). *See also Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1010 (11th Cir. 2020) (per curiam) (unpublished) ("We are left with the vocational expert's testimony that Valdez was able to work in 78,000 jobs in the national economy. We've held that a similar number of available jobs was substantial evidence to support the ALJ's finding on step five." (citing *Allen*, 816 F.2d at 602)); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 935 (11th Cir. 2015) (per curiam) (unpublished) (affirming ALJ's finding that 23,800 jobs in the national economy was a "significant number" satisfying Step Five).

In sum, because there was no "apparent" conflict for the ALJ to resolve at Step Five regarding the cleaner/housekeeper position, and because the VE's testimony shows that the number of those jobs existing in the national economy was both sufficiently high to allow for harmless-error review under *Viverette* and to support a finding of "significant numbers" of jobs at Step Five, the ALJ's failure to

resolve apparent conflicts regarding the merchandise marker and subassembler positions was harmless error.

No reversible error having been shown, the Court finds that the Commissioner's final decision denying Hurst's application for benefits is due to be **AFFIRMED**.

### V.    *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Hurst's June 4, 2019 SSI application is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Judgment in accordance with this order shall hereafter be set out by separate document, in compliance with Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the **27th** day of **September 2024**.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**